BACON, State Engineer, v. PLAIN CITY IRR. CO.

No. 5330.   Decided November 27, 1935.   (52 P. [2d] 427.)

*Joseph Chez*, of Salt Lake City, for appellant.

*L. A. Miner*, of Salt Lake City, and *DeVine, Howell & Stine*, of Ogden, for respondent.

ELIAS HANSEN, Chief Justice.

Plaintiff, the state engineer of the State of Utah, brought this action to recover judgment for assessments levied against the defendant for the purpose of securing funds with which to pay a water commissioner of Ogden river, who, it is alleged, regulated and distributed waters of that river to those entitled to the use thereof during the years 1928, 1929, and 1930. Laws of Utah 1925, c. 100, provides that:

"Wherever in the judgment of the State engineer, or the district court, it is necessary to appoint a water commissioner, or deputy commissioner for the distribution of water from any river system or

water source, such commissioner or deputy commissioner shall be appointed by the State engineer, after consultation with the water users. * * * The salary and expenses of such commissioner or deputy commissioner or commissioners shall be borne pro rata by the users of water from such river system or water source, upon a schedule to be fixed by the State engineer, and such pro rata share shall be paid by each water user to the State engineer in advance on or before the 1st day of July each year, and upon failure so to do, the State engineer may forbid the use of water by any such delinquent while such default continues, or may bring an action in the court for such unpaid ex-expense and salary."

The foregoing law was in some particulars amended in 1931. Laws of Utah 1931, c. 18, p. 22. It will be noted that before the amendment of 1931, the act merely provided that the salary and expenses of the commissioner "shall be borne pro rata by the users of water," without any provision as to the basis for computing the pro rata amount that shall be paid by the water user. After the amendment of 1931, the act provided that the salary and expenses of the commissioner "shall be borne pro rata by the users of water * * * based on the established rights of each water user." It was by virtue of the authority conferred upon the state engineer by the foregoing act that he levied and seeks to enforce the payment of the assessments involved in this controversy.

Some of the defendant's assignments of error attack the order of the court below in overruling its demurrer to plaintiff's complaint. It, in substance, is alleged in the complaint that an action was pending in the district court of Weber county, Utah, for the purpose of adjudicating the water of the Weber River System, including the water of Ogden river; that on August 8, 1924, the state engineer filed with the clerk of such court a "Proposed Determination of the Water Rights of the Weber River System, including Ogden River"; that by such proposed determination defendant was given a right in Ogden River of the priority of 1858 to the use of 33.20 second feet of water during high water and 29.05 second feet during low water; that on June 10, 1930 plaintiff appointed E. O. Borquist water commis-

sioner of Ogden River for the purpose of distributing the waters thereof in accordance with the proposed determination theretofore filed with the clerk of that court; that plaintiff prepared and fixed "a schedule of assessments on a pro rata basis according to said proposed determination, assessing the water users of Ogden River for the purpose of providing for salary and expenses of such commissioner, and that the prorated share of defendant amounts to $188.80 for the season of 1930 * * * $116.20 for the season of 1928, and $139.45 for the season of 1929"; that plaintiff has notified defendant of the assessment so levied, and has demanded the payment thereof, but defendant has refused, and continues to refuse, to pay the same. Plaintiff prayed judgment for the total amount of the assessment so levied. One of the grounds of defendant's demurrer is that the complaint is ambiguous, unintelligible, and uncertain, and that it cannot be ascertained therefrom upon what basis plaintiff fixed the schedule of assessments or arrived at the amount of the assessments that defendant should pay.

The proposed determination which apparently forms the basis of the assessments in question is not made a part of the complaint. The complaint is silent as to what is contained in the proposed determination, excepting that it awarded to defendant 33.20 second feet of water during high water, and 29.05 second feet during low water. No facts are alleged indicating the total amount of water rights awarded by the proposed determination or what part of the water, if any, was distributed by the commissioner to defendant. The complaint is likewise silent as to the basis used by the state engineer in determining the amount that should be assessed against defendant. So far as appears from anything alleged in the complaint, the computation may have been made upon the basis of the amount of land irrigated, upon the total amount of water awarded by the proposed determination, without regard to priorities of right or the amount of water that the various users were entitled to receive, or upon some other basis not

disclosed by the complaint. Neither this court nor the court below may take judicial notice of the so-called proposed determination filed by the state engineer with the clerk. Such document is in no sense a part of the pleadings in the instant case. It is not made so by any allegation of the complaint. The mere allegation that by the proposed determination defendant was awarded 33.20 second feet of water during high water and 29.05 second feet during low water, and that defendant's prorated share of the commissioner's salary and expenses for the years 1928, 1929, and 1930 amounted to $139.45, $116.20, and $188.80, respectively, does not advise the court or defendant of the facts upon which the assessments were based. Before being required to answer, defendant was entitled to know upon what facts the state engineer determined the amount that defendant should pay in assessments. In the absence of such facts, defendant might well be at a loss to know what it was required to meet at the trial. The demurrer to the complaint should have been sustained because of the ambiguity and uncertainty of the complaint in the particulars mentioned in the demurrer.

The defendant before answering demanded a bill of particulars. Its demand was by the court denied. Errors are assigned because of such ruling. The information which defendant sought by its demand for a bill of particulars was, in the main, the same kind of information which it sought by its special demurrer to the complaint. Had defendant's demurrer to the complaint been sustained, as it should have been, doubtless the complaint would have been so amended as to furnish defendant with all of the information it was entitled to receive before going to trial. Defendant answered after its demurrer was overruled. In its answer it denied that the assessments sought to be recovered from defendant were based on a pro rata basis according to the proposed determination, and alleged the fact to be that such assessment was "based upon a recorded acreage of land obtained by preliminary ex parte survey under the direction of the

office of the State Engineer several years ago, alleged to be claimed or owned by stockholders of various irrigation corporations and individuals using and claiming water for irrigation under various canals and ditches along the Weber and Ogden rivers and without any reference to the actual quantity of water owned or used by or awarded or distributed to the various water users under such system," and that the prorated share properly assessed to defendant does not exceed 30 per cent of the amount assessed against it.

Upon the issues thus raised by the complaint and the answer thereto, a trial was had before the court, sitting without a jury. Plaintiff was called as a witness in his own behalf. He, in substance, testified that he was state engineer during the years 1928, 1929, and 1930; that during the times mentioned in the complaint an action was pending in the district court of Weber county for the purpose of securing an adjudication of the water rights of the Weber river, including Ogden river; that in a proposed determination filed in that action defendant company was given a priority of 1858 to 33.20 second feet of water during high water, and 29.05 second feet during low water; that he appointed a water commissioner of Ogden river during each of the years 1928, 1929, and 1930 at an agreed salary; that the pro rata share of the salary and expenses of the commissioner assessed against the defendant for the year 1928 was $139.45, for 1929, $116.20, and for 1930, $188.80. Exhibits were offered and received in evidence purporting to show the names, addresses, and amounts of assessments of water users on the lower Ogden river for each of the years, 1928, 1929, and 1930. The exhibits showed that defendant was assessed in each year the amount set out in the complaint; that notice was given defendant of the amount assessed against it; and that it failed and refused to pay the same. On cross-examination, plaintiff testified that the basis used for making the assessment was the rights of the water users as shown by the proposed determination; that the proposed determination of the rights

of the water users of Ogden river were based on both the acreage and second feet; that the assessment was computed solely upon the basis of the second feet awarded by the proposed determination; that all water users were assessed according to the proposed determination without regard to the amount of land irrigated or the quantity of water used or available for use. A number of questions were asked Mr. Bacon as to the quantity of water, if any, delivered to the defendant during the years 1928, 1929, and 1930, but such questions were objected to by counsel for plaintiff, and the objections sustained. Such rulings are assigned as error. Considerable evidence was offered as to whether or not Mr. Bacon consulted with the water users of Ogden river before he appointed a water commissioner and as to whether or not he gave notice of a time and place when he would hold a meeting with the water users for the purpose of consulting with them concerning the appointment of a commissioner. The provisions of Laws of Utah 1925, c. 100, requiring that "a commissioner or deputy commissioner shall be appointed by the State Engineer after consulting with the water users," were in effect during the years here in question. We need not, however, pause to consider such evidence, because the defendant cannot escape its liability of paying its just proportion of the costs of distributing the water of Ogden river at this late date merely because the state engineer may have been derelict in consulting with it about the appointment of a commissioner. If the defendant was dissatisfied with the commissioner or the manner in which he was performing his duties, its recourse was to petition the district court for his removal as by the act provided.

Defendant called as witnesses a number of its officers and water masters. Such witnesses were interrogated as to the amount of water received by the defendant during the three years in question and as to the services, if any, rendered by the commissioner in the distribution of water to the defendant. Plaintiff objected to such

questions. The objections were sustained, and defendant excepted. Defendant assigns numerous errors because of such rulings. The court below indicated that he sustained the objections to such questions because, as he viewed the law, the state engineer was required to levy assessments on the water users of Ogden river according to the proposed determination filed with the clerk, and that the water users were required to pay such assessment without regard to the quantity of water actually distributed to them. As we understand the position of plaintiff, it is in accord with the position taken by the court below. On the contrary, counsel for defendant contends that the assessment should be based upon the quantity of water actually used by the various water users of Ogden river, rather than upon the amount which the proposed determination shows it is entitled to use. Upon the merits that seems to be the principal, if not the sole, question which divides the parties. The record before us, however, is by no means clear as to how the amount of assessments levied against the defendant would be any different if it had been made on the amount of water actually delivered, rather than upon the amount of water that should have been delivered according to the proposed determination. Had the commissioner performed his duty, it would seem that the defendant would actually have received such water as was awarded to it by the proposed determination, subject to such amendments thereto, if any, as were made by the court. The only evidence touching the services rendered by the commissioner is the testimony of the plaintiff to the effect that during part of the time involved in this controversy one commissioner took charge of the distribution of the whole of Ogden river, and part of the time one commissioner was in charge of the lower, and one the upper, part of the river. The record is silent as to the length of time the commissioner or commissioners served, or what, if anything, he or they did with respect to the distribution of the water of Ogden river to the persons entitled thereto. When defendant interrogated some of its witnesses as to

whether or not the commissioner distributed any water to defendant, an objection was interposed and the objection sustained. The proposed determination of the water of Ogden river was not offered or received in evidence. There were received in evidence notices sent by plaintiff to the defendant informing the latter of the amount of its assessments for each of the years 1928, 1929, and 1930. Such notices contained a schedule indicating the basis upon which the assessments were made. In the schedule were stated the names and post office addresses of the claimants, the numbers of the various claims, the amount in cubic feet per second of each claim, together with the amount assessed against each. The schedule fails to indicate the relative priorities of the various claims, or whether such claims are for a high or a low water right.

Under the provisions of Laws of Utah 1919, c. 67, § 70, amended by Laws of Utah 1921, c. 72, and Laws of Utah 1931, c. 18, p. 22, the salary and expenses of the commissioner should be borne pro rata by the water users on the basis of their established rights. While the act of 1925 is silent as to the basis on which the assessments should be made, this court held in the case of *Bacon, State Engineer*, v. *Gunnison Fayette Canal Co.*, 75 Utah 278, 284 P. 1004, 1005, that under such act a similar apportionment was contemplated as under the former act. This court further said in that case that:

"At least the apportionment ought to be according to some standard which approximates a proportion according to services rendered and benefits received."

To assess water users of a river system on the basis of second feet of water awarded by the proposed determination or a decree, may not be objectionable where all of the rights are of equal rank; but generally the rights of the users of the waters of natural streams in this state are not of equal rank. The rights first established are entitled to priority, and, as such, may entitle the owners thereof to all

of the water of the stream during the low-water season of each year, and, in years of scarcity, to the entire flow throughout the year. One with a secondary water right who, because of scarcity of water during a part or the whole of an irrigation season, receives no water or only a part of the water decreed to him, should not be required to pay as much as one with an equal amount of primary right who receives all of the water decreed to him. In other words, an assessment based solely upon the second feet of water awarded in a proposed determination or decree may not, and in case of primary and secondary water rights probably will not, approximate a proportion according to services rendered and benefits received. If the assessment were based upon the acre feet of water delivered to the various water users during each irrigation season, such assessment could be made to approximate a proportion according to services rendered and benefits conferred. Nor is an assessment based solely upon the number of second feet awarded to a water user by a proposed determination of the state engineer or a decree of court such an assessment as may be said to be based upon the established rights of such water user within the meaning of Laws of Utah 1931, c. 18. The relative date of priority of a water right is as much a part of an established water right as is the number of second feet covered by such water right. An established water right is measured by the number of acre feet of water that the owner thereof is entitled to receive from year to year, rather than by the number of second feet awarded by a proposed determination or by a decree. A water user is primarily concerned with the amount of water which he receives for use, rather than the number of second feet awarded to him by a proposed determination or decree.

Under the act of 1925, the assessments are made payable in advance to the state engineer on or before July 1st of each year. By the amendment of 1931, the date was changed to May 1st of each year. It is difficult, if not impossible, to determine accurately in advance the amount of water which

will be available for the use of the various water users during any given year; but one familiar with a given river system or other source of supply should be able to approximate the amount that will be available. If measurements have been made and kept for a number of years, an assessment based upon the average annual acre feet delivered to the various water users would meet the requirements of the law. In case no measurements are available, the assessments of necessity must at the outset be based upon other information, such as the amount of precipitation which has fallen upon the water shed constituting the source of supply. Such a method of arriving at the amount of assessments that the various water users should pay would be in accord with the doctrine announced in the case of *Bacon, State Engineer,* v. *Gunnison Fayette Canal Co.,* supra, and also in accord with the provisions of the statute since the amendment of 1931.

It is not made to appear from the evidence before us that the method employed by the plaintiff was in accord with that doctrine. On the contrary, apparently the state engineer based his assessments for the years in question solely upon the number of second feet awarded by the proposed determination, without regard to whether the various rights were primary or secondary, and without regard to the probable amount of water that would be available for the use of the various water users. There is no evidence in this case showing or tending to show whether the various rights which form the basis of the apportionment of the assessments here brought in question were of equal priority. There is evidence that the proposed determination under which the assessments were made recognized high-water rights and low-water rights on the Ogden river, which it may be assumed is but another way of describing primary and secondary water rights. The number of acre feet of water received by the various water users during the years in question, as well as during other years, was a proper sub-

ject of inquiry as bearing upon the basis that should be used for making the assessments.

The court below was in error in sustaining objections to those questions asked of its witnesses which were calculated to show the amount of water delivered to it during the years involved in this controversy. The evidence so excluded may have tended to show the number of acre feet of water which were available to the defendant during the years in dispute, and hence tend to establish the amount of assessments properly chargeable against it.

A number of questions were asked by counsel for defendant touching the water of Weber river and the assessments levied on defendant's rights in that river. The questions were objected to and the objections sustained. To such rulings exceptions were taken, and the same are assigned as error. Counsel for defendant contends that the defendant used water from both the Weber and Ogden rivers, and that if defendant is assessed on its Ogden river water right, it will be compelled to pay a double assessment. There is nothing in the record before us which supports that contention. We can perceive of no reason why defendant may not properly be assessed under the Weber river system its just proportion of the costs of distributing the water from that river, and likewise be assessed for its just proportion of the costs of distributing the water which it receives from the Ogden river. Apparently, defendant has paid its assessment on its Weber river water right. If, because the waters of the two streams commingle before they reach defendant's land, separate assessments of the water rights in the two streams is impracticable, such fact does not appear from the evidence. It was not, so far as appears, pointed out to the trial court, and it is not pointed out in defendant's brief on appeal. If there is any merit to such contention, doubtless it will be brought out upon a retrial. Upon this record it may not be said that the court below was in error in sustaining objections to the questions

with respect to the water and the assessments thereon which the defendant received from Weber river.

The judgment is reversed. The cause is remanded to the district court of Weber county, with directions to grant a new trial. Appellant is awarded its costs on appeal.

FOLLAND, EPHRAIM HANSON, and MOFFAT, J.J., concur.

WOLFE, Justice (concurring).

I concur. Assessments, according to the amendment contained in chapter 18, Laws of Utah 1931, require that the salary and expenses of the commissioner "shall be borne pro rata by the users of water * * * based on established rights of each water user." If the assessments are made according to established rights, they will necessarily be "according to some standard which approximates a proportion according to service rendered and benefits received." *Bacon* v. *Gunnison Fayette Canal Co.*, supra. Therefore, the assessments even under the 1925 law which did not contain the phrase about "established rights" should be based nevertheless on established rights. The difficulty is in determining what are the "established rights." As stated in the prevailing opinion, if all the rights are on the same level, then the assessments may be made pro rata on the basis of the decreed rights, but if there are primary and secondary rights and if, as the water falls away, some of the rights may call for the full amount given by the decree before the others may obtain their full allotment, then the established right or the right as worked out in practice is not necessarily completely reflected by the decreed right. For instance, if A. is entitled to 10 second feet and B. is entitled to 10 second feet, but A. is entitled to the preference before B. from the total water supply, and the water falls off so that B. only gets five second feet, the established rights relatively of A. and B. are not equal. If the water supply is sufficient to give both 10 second feet over a period of years, it may be empirically determined that their established rights are

equal. They have been "established" as equal through experience over that period of years. But if the supply of water in the stream should so vary that in some years A. should have 200 acre feet and B. less than 200 acre feet, upon A.'s preferential 10 second feet and B.'s 10 second feet postponed to A., then experience would show that B.'s established right relative to A. was not equal. The illustration might be clearer if we supposed a case where A. and B. both had the right to take 20 tons of wild hay from a field yearly, but A. had the right to take 15 tons of his first before B. got any. If, during a period of years, there was enough for both, experience would show that the content of the paper right was the same as the "established" right as found by experience. But if, during half the time, B. was, by the vagaries of nature, denied a part of his 20 tons, an assessment levied against both for the labor of harvesting on the basis that each received 20 tons would be unjust. If it were necessary to assess before the harvesting season or before the hay appeared above the ground, the average of what each got over a number of years would most likely comport with the "service rendered and benefit received."

It is for these reasons that I concur in the prevailing opinion to the effect that the state engineer should take into account, if possible, the average over a series of years of what A. and B. have obtained in order empirically to arrive at what their established rights are relative to each other, provided that the decree does not put them on exactly the same plane. Where the decree puts them on the same plane so that the actual amount that each receives during any one year is decreased proportionately when there is a falling off of the water supply, the decreed rights would suffice as a basis for apportionment of assessments; but otherwise where the decreed rights are legally not equal. In that case, one must determine what their established rights are relative to each other through experience.