UTAH POWER & LIGHT CO. v. RICHMOND IRRIGATION CO. et al.

No. 7228. Decided April 8, 1949. (204 P. 2d 818.)

See 67 C. J., Waters, sec. 409; 56 Am. Jur. 823. Subterranean or percolating waters, note, 109 A. L. R. 395.

*Edward W. Clyde,* of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for appellant.

*Thatcher & Young,* of Ogden, for respondents.

*Preston & Harris,* of Logan, and *Bullen & Bell,* of Logan, for respondents and cross-appellants.

LATIMER, Justice.

The dispute in this case arises out of an attempt made by the State Engineer to enforce payment of such sums of money as have been assessed against the water users of Little Bear River system in Cache County, Utah. A sketch of the distribution system of the river is attached for reference purposes. The assessments were made to defray the expense of administering the distribution of the waters of the Little Bear River under what is commonly referred to as the Kimball Decree. Certain of the water users failed

to pay the amounts assessed against them for the year 1947 and the State Engineer, in an attempt to enforce payment of the assessments, (1) petitioned for an order to show cause why judgment should not be rendered against them in the amount of their respective assessments and (2) further petitioned that if the court should find the assessments as made to be erroneous that the court declare the correct basis for the making of a proper assessment. After hearing the cause, the court concluded that the assessment was void and thereupon dismissed the case and refused to give the declaratory relief prayed for by the State Engineer. He has prosecuted this appeal and certain of the defendants have cross-appealed.

The Kimball Decree, which adjudicates and establishes most of the rights to the waters of the Little Bear River, was entered by the district court for Cache County in the year 1922. That decree in part provides that the State Engineer shall administer the decree and distribute the waters of the Bear River and its tributaries among the several appropriators and that the expenses thereby incurred are to be defrayed as provided by law or by subsequent order of the court. For a number of years preceding this litigation, the State Engineer had deemed it necessary to appoint a water commissioner to distribute the waters of the Little Bear River in accordance with the decree and elected to follow the same plan for the 1947 irrigation season.

In order to allocate the necessary expenses for the distribution of these waters the State Engineer looked to the provisions of 100-5-1, U. C. A. 1943. That statute, in part, provides:

"Whenever in the judgment of the state engineer, or the district court, it is necessary to appoint one or more water commissioners *for the distribution of water from any river system or water source,* such commissioner or commissioners shall be appointed annually by the state engineer, after consultation with the water users. The form of such consultation and notice to be given shall be determined by the state engineer as shall best suit local conditions, full expression

of majority opinion being, however, provided for. If a majority of the water users, as a result of such consultation, shall agree upon some competent person or persons to be appointed as water commissioner or commissioners, the duties he or they shall perform and the compensation he or they shall receive, and shall make recommendation to the state engineer as to such matters or either of them, the state engineer shall act in accordance with their recommendations; but if a majority of water users do not agree as to such matters, then the state engineer shall make a determination for them. The salary and expenses of such commissioner or commissioners shall be borne pro rata by the users of water from such river system or water source, upon a schedule to be fixed by the state engineer, based on the established rights of each water user, and such pro rata share shall be paid by each water user to the state engineer in advance on or before the first day of May each year, and upon failure so to do the state engineer may create a lien upon the water right affected by filing a notice of lien in the office of the county recorder in the county where the water is diverted, may forbid the use of water by any such delinquent, his successors or assigns, while such default continues, may bring an action in the district court for such unpaid expense and salary, and may foreclose such lien, or the district court having jurisdiction of his person may issue an order to show cause upon any delinquent user why a judgment for such sum should not be entered. * * *" (Italics added.)

Pursuant to the statute the State Engineer mailed notices to the water users of the Little Bear River system informing them that a meeting would be held at Hyrum, Utah, February 13, 1947, for the purpose of hearing the financial report for 1946, to make recommendations to the State Engineer as to the appointment of a water commissioner for the 1947 season, and to prepare a budget of salaries and other necessary expenses of distribution. The only water users failing to attend the meeting were the Wellsville North Field Irrigation Company and the Paradise Irrigation & Reservoir Company. Apparently those present felt that some additional information regarding the assessment to be made should be obtained before agreement on this matter could be reached and for this reason the meeting was continued. At a later meeting, it was agreed that a budget of $1205.00 be submitted to the State Engineer together with a recommendation that Jackson D. Large

be appointed water commissioner for 1947 and that his duties be: (1) to make measurements; (2) to distribute water; and (3) to make an annual report. The State Engineer adopted the water users' recommendations in toto, and levied an assessment to meet the recommended budget. The method of assessing the several water users which was adopted by the State Engineer, presents the principal issue involved in this appeal. The State Engineer followed what he believed to be the letter and spirit of 100-5-1, U. C. A. 1943, and assessed each water user an amount proportional to the average amount of water annually consumed by each user for the five year period preceding 1947, with five exceptions. The principal exception was made in the case of the Paradise Irrigation & Reservoir Company. This exception, which is the matter complained of in the cross-appeal, was made by the State Engineer because of prior court proceedings. In 1946, he instituted an action against the Paradise Irrigation & Reservoir Company to collect its assessment for that year and the Paradise Company filed a petition asking that the court direct the State Engineer to reduce its assessment. After hearing the matter, the court entered an order directing the State Engineer to assess the Paradise Company at the rate of $25.00 per year until further order of the court. No other water user was made a party to that proceeding and no appeal was taken by the State Engineer. In computing the assessment of the respective water users for the year 1947, the State Engineer, in following the previous court order, assessed the Paradise Company $25.00, although its average consumption for the five year period was 7,617.8 acre feet or approximately one-fifth of the waters of the Little Bear River. After deducting $25.00 from the total of $1205.00, which was the sum recommended to be assessed by the water users attending the annual meeting, $1180.00 remained to be raised from all other users. Individual assessments for the remaining water users were computed by assuming the sum of $1180.00 as the total cost to all users and pro-rating this sum on the basis of the relation-

ship, the five year average consumption of each user bore to the total five year consumption of the waters of the Little Bear River with the exception of defendants Bankhead, Cook, Olsen and Richman. Their assessments were computed on the basis of the amount of water they would use provided they consumed all the water allotted to them rather than on the average five year consumption rate which had been used in computing the assessments of all other users except the Paradise Irrigation & Reservoir Company. The reason for computing the assessment of these four defendants on the basis of the water allotted rather than on their average use was that their water rights were not established until November 12, 1946, when this court decided the case of *Wellsville East Field Irrigation Company* v. *Lindsay Land & Livestock Co.*, 104 Utah 448, 137 P. 2d 634, and for that reason no data on average consumption existed.

To clarify the positions of the various parties, the State Engineer admits that the assessment he levied was based solely upon the average amount of water used over the five year period and that he did not include as a factor in his formulae the actual services to be rendered by the commissioner in the distribution of the water. In adopting the average amount of water as the controlling factor he claims to rely upon 100-5-1, U. C. A. 1943 and cases hereinafter cited. The cross-appellants are satisfied with the method of assessment adopted by the State Engineer with the exception of the special consideration given the Paradise Irrigation & Reservoir Company. They argue that the Paradise Company should be assessed on exactly the same basis as all other water users on the Little Bear River. The respondent companies contend that to give 100-5-1, U. C. A. 1943, the construction for which the State Engineer contends, renders the statute unconstitutional in that it amounts to taking private property without due process; and that the mere fact that some person or water company is brought into a general adjudication suit as a party de-

fendant on the theory that his or its water rights form a part of the general river system, that he does not thereby become obligated to pay the cost of maintaining a water commissioner appointed by the court or State Engineer based upon the amount of water he consumes irrespective of whether he receives any service.

The difficult problem of making a proper assessment to defray the cost of distributing the waters of an irrigation system is not new in this jurisdiction. In the case of *Bacon* v. *Gunnison Fayette Canal Company,* 75 Utah 278, 284 P. 1004, the salary and expenses of the commissioner appointed to distribute the waters of the Sevier River System were apportioned by the State Engineer on the basis of the area of land upon which each claimant was entitled to use water. An action was brought to enforce payment of this assessment under Laws of Utah 1919, Chapter 67, Section 62, which in substance provided that these expenses should be borne pro rata by the water users upon a schedule to be fixed by the State Engineer. This court held that assessment void because it failed to give effect to the relative services rendered and benefits received, inasmuch as there was no substantial uniformity between the water used and the area irrigated. We said, however, that if there had been substantial uniformity between these two factors on that river system we would have readily approved the engineer's basis of apportionment. Our conclusion was that although mathematical exactness would be impractical, still the nearest approximation to a fair and ratable division of the burden ought to be adopted, and that the assessment, as made, did not satisfy that requirement.

In 1931 the 1919 statute was amended and in its amended form appears as 100-5-1, U. C. A. 1943 which we have previously set forth verbatim. It will be noted that under the 1931 amendment the schedule to be fixed by the State Engineer is to be based on the established rights of each water user. After the statute had been amended we de-

cided the case of *Bacon* v. *Plain City Irrigation Company*, 87 Utah 564, 52 P. 2d 427, 431. That was an action to enforce payment of delinquent assessments levied to defray the salary and expenses of a water commissioner for the Ogden River. The basis of the assessment in that case was the second feet of water to which each user was entitled. The assessment was held to be void for the reason that in using second feet of water as the sole basis of assessment, the State Engineer failed to take into account the difference in the amount of water used by one entitled merely to a secondary water right in comparison to others who have primary water rights. We reaffirmed, by quoting from the case of *Bacon* v. *Gunnison Fayette Canal Company*, supra, the principle that although mathematical accuracy is impossible as a practical matter in an assessment of this kind, the apportionment ought to be according to some standard which approximates a proportion according to services rendered and benefits received.

The State Engineer in the case at bar, relies upon the following exerpts from that opinion to justify the basis used for the assessment he levied.

"If the assessments were based upon the acre feet of water delivered to the various water users during each irrigation season, such assessment could be made to approximate a proportion according to services rendered and benefits conferred. * * * An established water right is measured by the number of acre feet of water that the owner thereof is entitled to receive from year to year * * *. A water user is primarily concerned with the amount of water which he receives for use. * * * If measurements have been made and kept for a number of years, an assessment based upon the average annual acre feet delivered to the various water users would meet the requirements of the law. In case no measurements are available, the assessments of necessity must at the outset be based upon other information such as the amount of precipitation * * *. Such a method of arriving at the amount of assessments that the various water users should pay would be in accord with the doctrine announced in the case of *Bacon, State Engineer*, v. *Gunnison Fayette Canal Company*, supra, and also in accord with the provisions of the statutes since the amendment of 1931."

It is argued by him that by virtue of the decision in that case, any assessment fixed on the basis of the average amount of water delivered to each water user during the preceding five years sufficiently meets the requirements of the law and a more exact apportionment of benefits and costs is not necessary.

Had the State Engineer used this basis to determine the levy against Paradise Irrigation & Reservoir Company, there undoubtedly would not have been a cross-appeal. However, in view of the previous order of the trial court, he felt compelled to assess the Paradise Company on a flat $25.00 a year figure. We shall, therefore, dispose of the contentions of the cross-appellants that this assessment is erroneous before discussing the contention made by the respondent, Wellsville North Field Irrigation Company.

The diagram which accompanies the opinion will show the Paradise Company occupying a position on the east fork of the Little Bear River with only the Jackson ditch

upstream from it and the Hyrum Irrigation Company as the water user immediately downstream. Its decreed right consists of sixty second feet until July 1st of each year, fifty second feet until July 10th and thirty-eight second feet thereafter. Whenever the flow of the east fork reduces below the Paradise Company's decreed right, it maintains a tight dam across the east fork of the river diverting the entire flow into its canal. During a considerable portion of each season, Paradise is entitled to all the waters of the east fork and maintains its tight dam so that during this time it is not necessary for the water commissioner to regulate the waters of the river in order to give Paradise the amount of water to which it is entitled. For the protection of lower users, however, the commissioner continues to take readings to make certain the Paradise Company is not taking more than its decreed rights. Because the Paradise Company normally requires less service from the water commissioner than that rendered other users, it naturally feels that it should not be assessed on the same basis with them—in fact, it would like to be excluded from the river system entirely and fight its own battles, should any arise. However, its problems are fundamentally the same as those of the other users on the stream. There are persons both above and below it who might interfere with its rights which the water commissioner is required to protect. Prior to the present system of appointing a water commissioner clothed with authority to regulate the distribution of the waters of the Little Bear River, serious disputes, sometimes accompanied by violence, occurred from time to time and established water rights were successfully adversed in certain of these instances. These difficulties have been largely done away with under the present system of extending protection to all users against encroachment upon existing water rights. While the relative position of certain of the users requires closer supervision in comparison with that required of others, even the Paradise Company, in its comparatively remote position on the stream, is not so isolated as to render the services of a

water commissioner unnecessary. The knowledge that a commissioner patrols the area may in and of itself reduce the possibility of strangers or junior appropriators interfering with the rights of the Paradise Company. Restating that mathematical exactness is not necessary for a valid assessment, and that the rule is—there should be a reasonable relationship between the proportion of the cost of distribution to be individually borne and the benefits and services to be received, we think an assessment should be levied against the Paradise Company on the same basis as that used to determine the levy imposed on other users.

A different question arises in connection with the assessment levied against Wellsville North Field Irrigation Company. Section 100-5-1 U. C. A. 1943, hereinbefore quoted, provides that the commissioner shall be appointed when in the judgment of the state engineer or the judge of the district court it is necessary for the purpose of distributing the waters from any river, stream or water source. This statute suggests two elements: First, that distribution of the water between users is necessary; and second, that the persons or companies chargeable with costs and expenses of the commissioner obtain their water from the same water system or common water source. To these two elements should be added the requirement suggested in our previous opinions, namely, that the assessment levied should bear some reasonable relationship to the services performed or the benefits conferred. The record shows an absence of all of these elements in the case of Wellsville North Field Irrigation Company.

There appears to be no necessity for a commissioner to distribute the waters obtained from the springs located on property of the Wellsville North Field Irrigation Company. The water used by this Irrigation Company rises from two springs and all of the flow of one spring and one-half the flow of the other is distributed through a system of canals exclusively under its maintenance and control. The flow from the springs does not equal the company's decreed

right and all of the water belonging to the company is used by its members or stockholders. While some of the water reaches the Little Bear River after it passes from the land irrigated by the company, there is no reasonable possibility of a commissioner performing services in connection with the distribution of the escaping waters. Neither is there any reasonable necessity for a commissioner to divide the waters of one spring as this is done by a permanent cement dividing headgate.

Moreover, we are not convinced that the Wellsville North Field Irrigation Company should be considered as a user of water from the Little Bear River system or from a source common with the other users. We do not believe the legislature intended to make the words "water source" so inclusive that every person using surface water, percolating water, spring water or artesian water should all be charged with the costs and expenses of a commissioner because some part of their flow could be traced to a common source. We believe that the words were used in their generally accepted meaning and that "source" was intended to be restricted to one origin such as a stream, a rise from the ground, a fountain, a spring, an artesian basin or some similar body; and that it was not the intention of the legislature to combine a river system with springs and artesian basins for purposes of distribution and administration. We conceive many situations where such a combination would bring about impracticable and impossible results. By way of illustration, if the word "source" were intended to be all inclusive, any artesian user in the Jordan River Valley underground water basin could be charged with the costs and expenses of distributing the waters of Big Cottonwood Canyon because part of the watters forming the basin percolate or flow in underground channels from the canyon. As usually understood, the source of water for the Wellsville North Field Irrigation Company is the springs and not the water which might percolate from the Little Bear River, which might flow on

underground streams, or which might have its origin in the rain that falls upon the land.

The element of reasonable relationship to the services performed or the benefits conferred is also missing in the case of Wellsville North Field Irrigation Company. Services of a commissioner have never been needed by or rendered to this company and for the year 1947, it affirmatively appears that services were not performed in any way dealing with this company or the water distributed by it. There is no necessity of a river commissioner to distribute the waters used by the stockholders of this company and policing of its method of distribution could not benefit other users. To require this company to bear a portion of the expense of maintaining a river commissioner who does not render service to it and who in no way assists in distributing its water to any user would not be in keeping with the purposes of the statute or the previous decisions of this court.

There is a suggestion in the record that this company claims certain pumping rights to waters of the Little Bear River during drouth seasons. If it becomes necessary for the company to attempt to exercise these rights or to use water from the river system, then the company should pay its proportionate share of the costs and expenses of the commissioner, based on the amount of water taken from the river system. There is no evidence that during the period used for computation purposes, this company has pumped any water from the Little Bear River, so under the present state of the record, we hold the assessment against Wellsville North Field Irrigation Company as being improper.

The cross-appellants and respondents have contended that certain items were included in the budget which were not proper costs to be charged against the water users. We sustain this contention, but we do not enumerate the particular items about which the parties complain. We merely point out that the statute

prescribes that only the costs and expenses of the commissioner may be pro-rated. Other expenses cannot be legally imposed against objecting users.

The judgment of the trial court is reversed with directions to proceed in accordance with this opinion.

PRATT, C. J., and WADE, and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

I concur, but desire, to reserve from my concurrence that portion of the court's opinion which holds that the Wellsville North Field Irrigation Company should not be considered a part of the Little Bear River system as far as assessing costs "for the distribution of water from any river system or water source." I concur in the part of the opinion dealing with the Wellsville North Field Irrigation Company on the other ground named, to wit: That no services are performed for this company by the commissioner, and the included reason that there can be no relationship between services performed for, or benefits received by, the user and the costs of distribution because no services are rendered nor benefits conferred. At this time I do not care to commit myself as to whether the springs which furnish the water for the Wellsville North Field Irrigation Company are a part of the Little Bear River System as meant by Section 100-5-1, U. C. A. 1943. What is an integrated river system with its related parts may vary according to the purposes, aspects or reasons which are under consideration. For purposes of adjudication it may include streams, their feeder streamlets and tributaries, and underground or surface bodies of water fed by them, and in some cases rivers, springs and streams issuing from such underground or surface bodies of water. See my concurring opinion in *Spanish Fork West Field Irrigation Company* v. *District Court of Salt Lake County*, 99 Utah 527, at page 551, 104 P. 2d 353, at page 363, a case in which

the whole system revolved about Utah Lake and was for the purpose of adjudicating waters between users of water entering the lake and users of water flowing from the lake through the Jordan River. There had been an adjudication of the waters of the Provo River and its entire water shed, but no adjudication between the users of water from that shed and the users of water flowing out of the lake.

However, I am inclined to agree with the conclusion of the court's opinion that in this case the users taking their water from the Wellsville North Field Irrigation Company are not within a river system or water source as meant by Sec. 100-5-1, U. C. A. 1943. But in the last analysis is it not because such users receive no service or benefit from the water commissioner of the Little Bear River System rather than that they are not users from the system?