265 P.2d 393

TRACY v. PETERSON et al.

No. 7966.

Supreme Court of Utah.

Jan. 12, 1954.

E. R. Callister, Jr., Atty. Gen., Robert B. Porter, Asst. Atty. Gen., for appellant.

Christenson & Christenson, Provo, for respondents.

WOLFE, Chief Justice.

Action by the appellant, State Engineer, to recover delinquent assessments made by him against certain water users of the Sanpitch River and its tributaries for the years 1950 and 1951 in order to help defray the salary and expenses of the water commissioner of that river. Before the trial the suit was either dismissed or discontinued against all the defendants except the three respondents. From a judgment rendered in favor of the respondents on the ground that the assessments were void, this appeal is brought.

The Sanpitch River rises in the north end of Sanpete Valley in Sanpete County and is fed by many streams running out of the mountains on the east as it courses southward through that valley. The respondents are water users on two of those feeder streams, the North Fork or North Sanpitch Creek as it is sometimes called, and the South Fork or South Sanpitch Creek as it is sometimes referred to. Both

streams empty into the Sanpitch River in the northern end of the valley. In 1950 and in 1951 after a meeting of the users of the main channel of the Sanpitch River, of which the respondents, however, were given notice, assessments were made against the respondents by the State Engineer to help pay the salary and expenses of the river commissioner. Although there are numerous other feeder streams or tributaries emptying into the Sanpitch River, no notice of those meetings was given to the water users on those streams or tributaries nor were any assessments made against them. The assessments made against the respondents were based upon the number of acre feet of water used by them which was estimated by the commissioner because there were no measuring devices installed.

The State Engineer made the assessments pursuant to the authority conferred on him by sec. 73–5–1, Utah Code Annotated 1953, which provides, so far as is pertinent here:

"Whenever in the judgment of the state engineer, or the district court, it is necessary to appoint one or more water commissioners for the distribution of water from any river system or water source, such commissioner or commissioners shall be appointed annually by the state engineer, after consultation with the water users. The form of such consultation and notice to be given shall be determined by the state engineer as shall best suit local conditions, full expression of majority opinion being, however, provided for. If a majority of the water users, as a result of such consultation, shall agree upon some competent person or persons to be appointed as water commissioner or commissioners, the duties he or they shall perform and the compensation he or they shall receive, and shall make recommendations to the state engineer as to such matters or either of them, the state engineer shall act in accordance with their recommendations; but if a majority of water users do not agree as to such matters, then the state engineer shall make a determination for them. The salary and expenses of such commissioner or commissioners shall be borne pro rata by the users of water from such river system or water source, upon a schedule to be fixed by the state engineer, based on the established rights of each water user, and such pro rata share shall be paid by each water user to the state engineer in advance on or before the first day of May each year, * * *."

The trial court held the assessments made against the respondents void because the State Engineer had not made assessments against any of the users on the other tributaries but had singled out the users on the North and South Forks and assessed them along with users diverting water from the main channel of the Sanpitch River.

We think the judgment of the trial court correct. We find in the record no

justification, and none has been suggested elsewhere, for the action of the State Engineer in making assessments against users on two small tributaries but omitting to make any assessments against users on the other tributaries, some of which are considerably larger streams. No differentiating factors appear which could make reasonable the action of the State Engineer in assessing users on two tributaries but not on the others. Sec. 73–5–1, Utah Code Annotated 1943, directs that the salary and expenses of the commissioner "shall be borne pro rata by the users of water from such river system or water source, * *." The burden here was not borne pro rata.

Until 1950 it appears that no assessments were made against any users on the tributaries. The users on the main channel sustained the entire cost of maintaining the water commissioner. Commencing, however, in 1950, the commissioner made frequent trips up the North and South Forks to inspect the diversions of the several users and to estimate the flow of water running through their diversions. Although the decreed water rights of the users on both of these forks exceed the contents of the stream at all times except during the spring run-off, and although during most of the summer the entire flow of the forks is used by the users thereon, it apparently was the judgment of the State Engineer or water commissioner that the diversions of the users on the forks should be inspected to ascertain whether the water was being distributed among them according to their decreed rights. In this regard the users on the forks are similarly situated to the users on the East Fork of the Little Bear River which was discussed in Utah Power & Light Co. v. Richmond Irrigation Co., 115 Utah 352, 204 P.2d 818, 824, where we said:

"While the relative position of certain of the users requires closer supervision in comparison with that required of others, even the Paradise Company, in its comparatively remote position on the stream, is not so isolated as to render the services of a water commissioner unnecessary. The knowledge that a commissioner patrols the area may in and of itself reduce the possibility of strangers or junior appropriators interfering with the rights of the Paradise Company. Restating that mathematical exactness is not necessary for a valid assessment, and that the rule is —there should be a reasonable relationship between the proportion of the cost of distribution to be individually borne and the benefits and services to be received, we think an assessment should be levied against the Paradise Company on the same basis as that used to determine the levy imposed on other users."

■ Once, however, the State Engineer or water commissioner determined that the services of the water commissioner were necessary on the North and South Forks, it would seem that his services in a similar

capacity would be likewise necessary on the other forks or tributaries of the river, absent the existence of any factors which would provide a reasonable basis for differentiating between tributaries. Such differentiating factors do not appear in the instant case. The State Engineer cannot without some reasonable basis render services for and assess the users on one fork of a stream, but omit to render similar services on other forks. Such a practice does not make the assessments against the users who are assessed their "pro rata share."

It is contended by the State Engineer that the lower court erred in awarding costs against him. The respondents justify the award of costs under the first sentence of Rule 54(d) (1) of the Utah Rules of Civil Procedure, while the State Engineer asserts that the last sentence of that rule precludes the taxing of costs against him. Rule 54(d) (1) provides:

"Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; * * *. Costs against the state of Utah, its officers and agencies shall be imposed only to the extent permitted by law."

 The position of the State Engineer is correct. The sovereign is not liable for costs unless there is some statute or rule of court which expressly or by clear implication includes it. United States v. Stevens, 8 Utah 3, 28 P. 869; Dietemann v. People, 78 Colo. 92, 239 P. 1020; People v. One Plymouth Sedan, 21 Cal.App.2d 715, 69 P.2d 1011; Washington Recorder Pub. Co. v. Ernst, 1 Wash.2d 545, 97 P.2d 116; State ex rel. Bank Com'r v. Crum, 185 Okl. 462, 94 P.2d 231. The general terms of a statute giving costs to the prevailing party do not include the sovereign. State v. Ganong, 93 Or. 440, 184 P. 233; Chicago, M. & St. P. R. Co. v. Public Util. Comm. of Idaho, 47 Idaho 346, 275 P. 780; Chastain's Inc. v. State Tax Comm., 72 Idaho 344, 241 P.2d 167.

 We have found no statute or rule of procedure in this state, and none has been cited to us by the respondents, which allows costs to be assessed against the state or the state engineer in this type of action. Sec. 78–27–13, U.C.A.1953, formerly § 104–44–19, U.C.A.1943) providing:

"When a state is a party and costs are awarded against it, they must be paid out of the state treasury, and the auditor shall draw his warrant therefor on the general fund."

is of no aid to the respondents. Similar statutory provisions in California, § 1028, Code Civ.Proc., and Idaho, § 12–118, Idaho Code, have been held not to authorize the taxation of costs against the state but only to provide the source from which such costs shall be paid when authorized. People v. One Plymouth Sedan, supra; Chastain's, Inc. v. State Tax Comm. supra.

218

The judgment of the lower court, except for the award of costs, is affirmed. Each party to bear its own costs.

McDONOUGH, CROCKETT, HENRIOD and WADE, JJ., concur.