2001 UT 21

Kay K. ROBINSON; Vance R. and Marilee L. Scadden; Benjamin E. and Le Joie Reichel; Harland G. and Ardena B. Taylor; Douglas L. and Janice W. Frost; and Harold B. and Charlotte A. Austin, acting in their own behalf and for all other parties interested or otherwise similarly situated, Plaintiffs and Appellants,

v.

STATE of Utah and its Agency the Utah Department of Transportation, Defendants and Appellees.

No. 990206.

Supreme Court of Utah.

March 6, 2001.

Rehearing Denied March 2, 2001.

Douglas M. Durbano, George W. Burbidge, II, Layton; Randon W. Wilson, Vincent C. Rampton, Salt Lake City, for plaintiffs.

Jan Graham, Att'y Gen., Steven F. Alder, Asst. Att'y Gen., Salt Lake City, for defendants.

DURRANT, Justice:

¶ 1 Appellants, a group of landowners, filed an inverse condemnation action against the State of Utah and its agency, the Utah Department of Transportation (collectively "UDOT"). The case settled before trial, but the question of whether appellants were entitled to an award of attorney fees was left open. The district court denied appellants' motion for an award of attorney fees, and appellants appeal that decision. We reverse.

## BACKGROUND

¶ 2 U.S. Highway 89 spans the length of Utah from Arizona to Idaho, connecting most of this state's populated areas. At some point in the early 1980s, UDOT determined that the Highway 89 corridor between Farmington and South Ogden needed significant expansion and improvements to increase public safety. To this end, UDOT began exploring potential alternatives, holding public meetings, and conducting a "scoping study." In compliance with the National Environmental Policy Act, UDOT prepared an Environmental Impact Statement (EIS) for the project. An initial draft was completed in December 1995, and the Final EIS was issued on September 9, 1996.

¶ 3 The EIS revealed UDOT's preferred alternative for improvements as well as other options. Further, the EIS specifically "iden-

tified 136 houses, 22 businesses, and numerous public properties and buildings, that may be impacted to some degree by the preferred alternative." Appellants' homes were among these specifically identified properties.

¶ 4 UDOT anticipated the project would be broken up into several stages as budgetary constraints allowed. Because of the uncertainty of state and federal funding, no dates were set for either the beginning or completion of any stage of the project or for the acquisition of any affected property. The exact extent and nature of improvements remain undetermined. At present, some work has already begun; however, the entire project may not be completed for more than ten years.

¶ 5 After publication of the Final EIS, appellants attempted to sell their homes. The contemplated sales were not prompted by UDOT's proposed expansion of the highway, but rather, by reasons such as job relocations and health concerns. Appellants claim they were unable to sell their properties for market value, however, because, "as a direct and proximate result of [UDOT's] actions in identifying [appellants'] property [in the EIS], the value and marketability of the property ha[d] been negatively impacted." Therefore, appellants asked UDOT to purchase their homes at fair market value. The parties were unable to come to terms, however, and appellants sued UDOT claiming inverse condemnation. Before trial, the parties stipulated that UDOT would purchase appellants' homes at mutually agreeable prices. The stipulation was approved by the trial court. Because the stipulation did not address the question of attorney fees, appellants filed a Motion for an Award of Attorney Fees. The district court denied the motion; appellants appeal that decision.

## STANDARD OF REVIEW

¶ 6 In arguing the motion for an award of attorney fees, the parties relied on

their pleadings and also submitted affidavits to the district court. "Where outside matters are 'presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....'" *Swenson v. Erickson*, 2000 UT 16, ¶ 8, 998 P.2d 807 (quoting Utah R. Civ. P. 12(b)). Accordingly, "we consider the evidence in the light most favorable to the nonmoving party and affirm only where it appears that there is no genuine dispute as to any material issues of fact and the moving party is entitled to judgment as a matter of law." *Id.* ¶ 10 (citing *Thayne v. Beneficial Utah, Inc.*, 874 P.2d 120, 124 (Utah 1994)). We give no deference to the trial court's legal conclusions, reviewing them, instead, for correctness. *See id.* (citing *Geisdorf v. Doughty*, 972 P.2d 67, 69–70 (Utah 1998)).

## DISCUSSION

¶ 7 Appellants rely upon both federal and state law for their contention that they are entitled to attorney fees. As to federal law, they assert that UDOT is required to pay their fees under the Uniform Relocation Assistance Real Property Acquisition Procedures Act, 42 U.S.C.A. §§ 4601–4655 (1995 & Supp.2000) (the "Uniform Act"), and the federal regulations that implement the Uniform Act. In response, UDOT argues, inter alia, that the Uniform Act and its implementing regulations do not provide individuals with a cause of action for attorney fees, but merely define the relationship between state and federal agencies.

¶ 8 As to state law, appellants argue that even if the Uniform Act and its regulations do not directly entitle them to attorney fees, they are so entitled by virtue of the Utah Administrative Code,[1] in which UDOT has adopted wholesale those same federal regulations.[2] We agree. Because we rely on state law in deciding this case, we do

1. Under Utah law, an award of attorney fees is recoverable if it is provided for by statute. *See Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988). Since state administrative rules are implemented pursuant to statutory authority and have the force and effect of law, *see, e.g., Horton v. State Ret. Bd.*, 842 P.2d 928, 932 n. 2 (Utah

Ct.App.1992), we consider them as we would statutory sources for an award of attorney fees.

2. The federal regulations were adopted by rule 933–1–1 of the Utah Administrative Code, which provides as follows: "The State of Utah incorporates by reference 49 CFR 24 as amended in the

not reach the question of whether federal law also provides a basis for the award of fees.

## I. APPLICABILITY OF 49 C.F.R. § 24.107 TO THE SETTLEMENT AT ISSUE

¶ 9 We first consider the question of whether 49 C.F.R. § 24.107, as adopted by Rule 933–1–1 of the Utah Administrative Code, requires, on its face, the payment of attorney fees in circumstances such as are presented in this case. Section 24.107 applies "to any acquisition of real property for ... programs and projects where there is Federal financial assistance [3] in any part of project costs...." 49 C.F.R. § 24.101(a) (1995). In this case, the parties stipulated, for the purposes of the motion for an award of attorney fees, that the U.S. Highway 89 expansion and improvement project would be "a federally funded state project."

¶ 10 Section 24.107 provides that "[t]he owner of the real property *shall* be reimbursed for any ... reasonable attorney ... fees, which the owner actually incurred because . of a condemnation proceeding, if: ... (c) The court having jurisdiction renders a judgment in favor of the owner in an inverse condemnation proceeding, or the Agency effects a settlement of such proceeding." *Id.* § 24.107 (emphasis added). Appellants' complaint includes a claim that UDOT had inversely condemned their property. That lawsuit was settled and UDOT "agreed to purchase Plaintiffs' homes immediately at mutually agreeable prices." Thus, this case is squarely within the language of section 24.107.[4]

## II. THE CONSTITUTIONALITY OF UDOT'S ADOPTION OF 49 C.F.R. § 24.107

¶ 11 Having concluded that Section 24.107, as adopted by rule 933–1–1, requires the

Federal Register, March 2, 1989, as its administrative rules on the acquisition of rights of way."

3. "The term *Federal financial assistance* means a grant, loan, or contribution provided by the United States...." 49 C.F.R. § 24.2(j) (1995).

4. UDOT contests this conclusion by arguing that the inverse condemnation proceeding lacked merit. The settlement of such a proceeding is covered by the plain language of section 24.107,

payment of attorney fees, we next address the constitutionality of rule 933–1–1's adoption of section 24.107. UDOT contends that it unconstitutionally exceeded its own authority in adopting the federal regulations that implement the Uniform Act. In so doing, UDOT finds itself in the unenviable position of arguing that it is not bound by its own rule. We disagree and hold that UDOT is bound by Rule 933–1–1.

### A. Article V, Section 1

¶ 12 UDOT contends that article V, section 1 of the Utah Constitution limits UDOT's rulemaking authority. That section provides as follows:

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no *person charged with the exercise of powers properly belonging to one of these departments,* shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

Utah Const. art. V, § 1 (emphasis added). In adopting section 24.107, UDOT engaged in the legislative function of rulemaking. UDOT contends that, as an executive branch agency, it was precluded from doing so by article V, section 1. This argument fails, however, because UDOT is not a part of the executive branch for purposes of article V, section 1. The constitution itself defines those "persons" who are deemed to be a part of the Executive Department, and that definition does not include administrative agencies. *See* Utah Const. art. VII, § 1. Addressing this question in *State v. Gallion,* 572 P.2d 683 (Utah 1977), we held as follows:

> however, regardless of the merit of the underlying claim. Similarly, it is irrelevant whether UDOT planned to acquire appellants' property because of the hardship appellants were under and not because it felt the Uniform Act, the federal regulations implementing the Uniform Act, or the Utah Administrative Code compelled it. It remains a settlement of an inverse condemnation proceeding, and, therefore, 49 C.F.R. § 24.107 governs.

Since the inhibitions of the Article V, Section 1, are directed toward specific "persons," there is nothing to restrain the legislative department from creating administrative bodies to exercise legislative functions, viz., rule making. Although administrative bodies are nominally designated a part of the executive branch, they do not fall within the Constitutional definition of the Executive Department and the prohibition of Article V, Section I does not apply thereto.

*Id.* at 687. We see no reason, and UDOT provides none, for departing from this interpretation. Therefore, we hold that article V, section 1 does not limit UDOT's authority, as an administrative body, to make rules.

### B. Article VI, Section 1

¶ 13 UDOT further contends that its rulemaking authority is limited by article VI, section 1 of the Utah Constitution, which, in pertinent part, vests "[t]he Legislative power of the State ... [i]n ... the Legislature of the State of Utah...." Utah Const. art. VI, § 1. Under this argument, even if UDOT is not constitutionally a part of the executive branch for purposes of article V, section 1, it is, nevertheless, precluded by article VI, section 1 from exercising legislative power because it is not a part of the legislature either. The first question that arises in this regard is whether the legislative power of rulemaking was properly delegated by the legislature to UDOT.

¶ 14 Article VI, section 1 does restrict the ability of the legislature to delegate legislative functions to administrative agencies. *See Gallion,* 572 P.2d at 687 (noting that while article V, section 1 does not "proscribe the delegation of legislative power, ... under Article VI, Section 1, there are limitations in this regard ..."). Because the constitution vests the legislative power in the legislature, administrative agencies may only effect policy mandated by statute and cannot exercise a sweeping power to create whatever rules they deem necessary. *See State v. Goss,* 79 Utah 559, 11 P.2d 340, 341–44 (1932). Accordingly, "[w]here the legislature delegates to an administrative agency power to make rules and regulations, such delega-tion must be accompanied by a declared policy outlining the field within which such rules and regulations may be adopted." *Bird & Jex Co. v. Funk,* 96 Utah 450, 85 P.2d 831, 834 (1939). The question then becomes whether the legislature expressed a policy that adequately directed UDOT in enacting rule 933–1–1. We hold that it did.

¶ 15 Section 72–1–201 of the Utah Code "create[s] the Department of Transportation which shall: ... (8) in accordance with Title 63, Chapter 46a, Utah Administrative Rulemaking Act, make policy and rules for the administration of the department, state transportation systems, and programs." Utah Code Ann. § 72–1–201 (Supp.2000). Thus, the legislature specifically granted UDOT the power to enact administrative rules. An agency "rule" is defined as "an agency's written statement that ... (i) is explicitly or implicitly required by state or federal statute or other applicable law; (ii) has the effect of law; (iii) implements or interprets a state or federal legal mandate; and (iv) applies to a class of persons or another agency." Utah Code Ann. § 63–46a–2(16)(a) (1997). Together, these sections evince a legislative intent that UDOT enact rules to comply with federal mandates.

¶ 16 And more specifically, section 72–1–208(2) of the Utah Code requires that UDOT, "with the approval of the governor, *shall cooperate with the federal government in all federal-aid projects* and with all state departments in all matters in connection with the use of the highways." Utah Code Ann. § 72–1–208(2) (Supp.2000) (emphasis added). In so cooperating, the legislature allows UDOT to "incorporate[ ] by reference ... regulation[s] that ha[ve] been adopted by a federal agency...." Utah Code Ann. § 63–46a–3(7)(a) (Supp.2000). Read together, these statutes demonstrate a clear delegation by the legislature to UDOT of rulemaking authority, as well as a legislative policy directing UDOT to comply with federal mandates for federal-aid projects.

¶ 17 UDOT's wholesale adoption of the regulations implementing the Uniform Act complies with the federal mandate that, in order to receive federal financial assistance, a state agency must either (1) give assurances

to the federal government that it will comply with the Uniform Act and the federal regulations implementing the Uniform Act or (2) certify with the Federal Highway Administration that it will act according to State laws that are equivalent to the Uniform Act in purpose and effect. *See* 49 C.F.R. § 24.4(a)(1) (1995) (requiring assurances); 49 C.F.R. §§ 24.601–.602 (1995) (discussing the certification process). In light of the clear legislative policy of compliance with federal mandates in such a situation, the UDOT rule is not in conflict with Article VI, section 1, of the Utah Constitution. The power to make such a rule was properly delegated by the legislature to UDOT.

### III. STANDARD FOR CREATION OF ATTORNEY FEE LIABILITY

¶ 18 UDOT next argues that beyond the normal legislative authorization required by article VI, section 1 of the Utah Constitution for an administrative agency to enact a rule, when the agency seeks to enact a rule creating attorney fee liability its legislative authorization must be explicit or clearly implied. In support of this argument, UDOT relies on *Tracy v. Peterson*, 1 Utah 2d 213, 265 P.2d 393 (1954).

¶ 19 In *Tracy*, the trial court imposed costs on the state pursuant to rule 54(d)(1) of the Utah Rules of Civil Procedure, which allows costs to be awarded to the prevailing party. We concluded that this rule provided an insufficient basis for awarding costs against the state, holding that "[t]he sovereign is not liable for costs unless there is some statute or rule of court which expressly or by clear implication includes it.... The general terms of a statute giving costs to the prevailing party do not include the sovereign." *Id.* at 396.

¶ 20 UDOT contends that *Tracy*'s analysis as to an award of costs would apply *a fortiori* to an award of attorney fees against the sovereign. From this UDOT concludes that it exceeded its own authority in enacting a rule creating attorney fee liability because it did not have "clear and explicit statutory authorization" to do so.

¶ 21 Assuming, without deciding, that *Tracy* applies *a fortiori* to an award of attorney fees, we nevertheless conclude that UDOT's reliance on *Tracy* is misplaced. *Tracy* does not purport to limit the potential sources of costs liability to statute or court rule, thereby precluding an agency rule as a source of costs liability. Although *Tracy* referred to statutes and rules of court as the most typical sources of costs liability, it did not address the question of what other sources of law might provide a legitimate basis for an award of costs. Instead, *Tracy* propounds a rule of interpretive construction that limits the role of a court in imposing costs liability on the state, but that does not necessarily limit the role of an administrative agency in enacting a rule imposing such liability on the state. In the case at hand, UDOT has enacted a rule providing for attorney fee liability. The *Tracy* standard is a limitation on our latitude in interpreting that rule, not on UDOT's authority to make the rule. We can impose attorney fee liability on UDOT only if the rule it enacted expressly or by clear implication created such liability. A different standard applies to UDOT's enactment of that rule, however. We have held that an agency's rules need only "be *consistent* with its governing statutes." *Sanders Brine Shrimp v. Audit Div. of the Utah State Tax Comm'n*, 846 P.2d 1304, 1306 (Utah 1993) (emphasis added). Accordingly, as long as " 'the *policy and purpose* of the legislation are *clearly expressed*, the absence of detailed standards in legislation will not necessarily render it invalid as an unlawful delegation of legislative authority.' " *Opinion of the Justices to the Senate*, 422 Mass. 1201, 660 N.E.2d 652, 658 (1996) (emphasis added) (quoting *Chelmsford Trailer Park, Inc. v. Chelmsford*, 393 Mass. 186, 469 N.E.2d 1259, 1262 (1984)).

¶ 22 With these standards in mind, we turn to the statute and administrative rule at issue in the case at hand. Again, assuming that *Tracy* applies *a fortiori* to an award of attorney fees, we first consider the question of whether section 24.107, as adopted by UDOT in rule 933–1–1, satisfies the *Tracy* standard. Clearly, it does. It expressly provides that the owner of real property shall be reimbursed for attorney

fees where an agency settles a condemnation action.

¶ 23 We next consider the question of whether UDOT's adoption of this section was consistent with its governing statutes. Those statutes include a clear legislative policy to cooperate with the federal government on federal-aid projects. It is unnecessary for the legislature to specifically address each issue that may arise when an agency actually implements the policy. This is especially true where, as here, the administrative agency lacks any real discretion in implementing the policy. The legislature dictated that UDOT must comply with federal mandates and, more specifically, cooperate with the federal government in federal aid projects. *See* Utah Code Ann. §§ 63–46a–2, 72–1–201, and 72–1–208(2). In light of these directives, UDOT had no discretion in determining whether to follow the mandates of the Uniform Act and its implementing regulations. By adopting a rule that complied with federal requirements, UDOT acted consistently with the legislative directives of sections 72–1–201, 63–46a–2, and 72–1–208(2) of the Utah Code. We decline to apply a more rigorous standard to an agency's rulemaking solely because that rulemaking creates attorney fee liability, and conclude that UDOT's adoption of a rule creating attorney fee liability was consistent with the authority delegated to it by the legislature.

## IV. VAGUENESS

¶ 24 Finally, UDOT contends that the administrative rule itself is too vague to create liability as it only incorporates by reference the federal regulations. We find no merit in this. As incorporated in the Utah Administrative Code, these regulations specifically and clearly create a right to an award of attorney fees in settlements of condemnation proceedings. Therefore, the UDOT regulations are valid.

## CONCLUSION

¶ 25 The district court erred in denying appellants' motion for an award of attorney fees. The Utah Administrative Code mandates an award of a plaintiff's attorney fees where UDOT settles the plaintiff's inverse condemnation action. We remand for proceedings consistent with this opinion.

¶ 26 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.