2008 UT 83

**STATE of Utah, Plaintiff and Appellee,**

v.

**Steven Arthur BRIGGS, Defendant and Appellant.**

No. 20060671.

Supreme Court of Utah.

Dec. 12, 2008.

Mark L. Shurtleff, Att'y Gen., Laura B. Dupaix, Paul G. Amann, Asst. Att'ys Gen., Salt Lake City, for plaintiff.

Lori J. Seppi, Teresa L. Welch, Salt Lake City, for defendant.

On Certification from the Utah
Court of Appeals

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 Steven Arthur Briggs was convicted for failure to register as a sex offender in violation of Utah Code section 77–27–21.5 ("registration statute" or "statute").[1] Briggs chal-

---

1. Section 77–27–21.5 has been amended six times between 2000 and 2007. For simplicity

lenges the constitutionality of the statute and the sufficiency of the evidence supporting his conviction. First, Briggs argues that the statute violates the non-delegation doctrine of the Utah Constitution because it delegates legislative power to the Department of Corrections ("DOC"), an executive agency. Second, Briggs argues that the evidence presented at trial was insufficient to support a conviction that he "knowingly" failed to register. Finally, Briggs argues that the statute violates his right to procedural due process because it designates him as a currently dangerous sex offender without notice and an opportunity to be heard on the validity of that designation. We conclude that Briggs's non-delegation and insufficiency of the evidence claims are without merit. As to Briggs's procedural due process argument, we hold that the provisions of the registration statute requiring him to register and requiring the DOC to publish information related to his prior convictions, current address, appearance, and other similar information do not violate his right to procedural due process. Thus, we affirm his conviction for failure to register as a sex offender. However, we hold that the provision in the registration statute that requires the DOC to publish his primary and secondary targets, implying that he is currently dangerous, violates his right to procedural due process unless the DOC provides him with notice and an opportunity to be heard as to whether he is currently dangerous. Accordingly, the DOC may not publish information implying that Briggs is currently dangerous unless it proves as much at a hearing where Briggs has notice and an opportunity to be heard on the validity of that designation.

## BACKGROUND

¶ 2 In 1986, Briggs was convicted of sexual abuse of a child and served fifteen years in prison. A few days prior to Briggs's release from prison in 2002, a DOC officer presented him with a form that included Briggs's physical description, previous address, information on his conviction, and scheduled release date.

The form that Briggs was presented with provides, in large print at its center,

I have been notified of my responsibility to register as a sex offender as required by Utah Code Annotated 77–27–21.5. I have also been notified of my continuing responsibility to annually register with the Utah State Department of Corrections and again within 10 days of every change of my place of habitation.

¶ 3 The DOC officer requested that Briggs sign the form, but Briggs refused. An investigator with the DOC, Agent Pepper, then met with Briggs to read and explain the form to him. Agent Pepper explained to Briggs that he needed to sign the form and that it was against the law to refuse to sign it. Briggs replied, "You'll have to file charges against me if you can find me." After steadfastly refusing to sign the form, Briggs was sent back to his housing unit. Agent Pepper noted on the registration form "Refused to sign @ 0820 hrs."

¶ 4 At the time of his scheduled release, Briggs was again given an opportunity to sign the form, but he again refused. Agent Pepper filed a case against Briggs, charging him with failure to register as a sex offender, and Briggs was taken from the prison directly to Salt Lake County Jail. The charge was dismissed on motion of the district attorney, who reasoned that signing the sex offender registration form is not a requirement of the registration statute or an element of failure to register as a sex offender. Briggs was released.

¶ 5 After his release, Briggs moved to a Salt Lake City hostel and then, a month later, moved to a second Salt Lake City address where he has lived since. There is no indication that Briggs was hiding his whereabouts from the DOC; in fact, he included his first address in a letter he sent to the DOC Department of Adult Probation and Parole to inquire about property he lost when he was first incarcerated. Additionally, Briggs spoke with and gave his name to a DOC officer who contacted him at his residence and to police officers who visited him

and because none of the amendments are material to our analysis, we refer to the 2007 version of

the statute throughout this opinion.

at his residence while investigating neighborhood crimes. During this period of time, Briggs was under the impression that he was registered as a sex offender because his attorney showed him his profile on the registry website during an office visit. However, the registry lacked his current address information, a statutory registration requirement.[2]

¶ 6 In May 2005, Briggs came to the attention of an FBI agent, who, after an investigation, determined that Briggs was not registered as required by the statute. The FBI agent contacted the DOC and verified that, although Briggs was supposed to register, he was not registered at that time. The agent located Briggs at his residence using a subscription database and arrested him for failure to register as a sex offender.

¶ 7 At the bench trial, Briggs moved the court to declare the registration statute unconstitutional. He asserted that the statute is unconstitutional because it violates the non-delegation doctrine of the Utah Constitution, violates his right to procedural due process, and is an ex post facto law.

¶ 8 The trial court denied the motion in a memorandum decision. As for Briggs's non-delegation claim, the court ruled that the DOC

> has not been given the authority to determine if failure to register will constitute criminal behavior, or even what must be disclosed to the [DOC], and the [DOC] does not have the authority to determine the penalty for violation.... The [DOC] is charged simply with the task of setting up the procedures for registration to ensure that the process of registration is orderly.

The trial court, therefore, held that the registration statute does not violate the non-delegation doctrine of the Utah Constitution.

¶ 9 As to Briggs's procedural due process claim, the trial court held that the United States Supreme Court's decision in *Connecticut Department of Public Safety v. Doe* "already ruled that Utah's and other similar states' sex offender registration requirements do not violate federal due process requirements."[3] It further held that "Defendant must show that Utah's Constitution affords him greater protections than does the U.S. Constitution," and that it was "not persuaded that Defendant's procedural due process rights in the present circumstance are greater under the Utah Constitution than they are under the U.S. Constitution." The trial court dismissed Briggs's ex post facto claim using the same reasoning, holding "that Defendant has not presented any reason why Utah would afford greater ex post facto protections than the federal Constitution."

¶ 10 At the close of argument, Briggs moved for a directed verdict, alleging that the prosecution had presented insufficient evidence to support a finding that Briggs had "knowingly" failed to register. The trial court denied the motion and found Briggs guilty of failing to register as a sex offender. Briggs appeals his conviction, and we have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (Supp.2008).

## STANDARD OF REVIEW

¶ 11 A challenge to the constitutionality of a statute presents a question of law, which we review for correctness.[4] In assessing a claim that there was insufficient evidence to support a trial court's verdict, we "sustain the trial court's judgment unless it is 'against the clear weight of the evidence, or if [we] reach[ ] a definite and firm conviction that a mistake has been made.'"[5]

## ANALYSIS

¶ 12 We will first discuss Briggs's argument that the registration statute violates the non-delegation doctrine inherent in article V, section 1 of the Utah Constitution, the separation of powers clause, by impermissibly delegating legislative authority to the DOC. Then we will discuss his claim that the State failed to produce sufficient evidence to

2. Utah Code Ann. § 77–27–21.5(11) (Supp.2007).

3. 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

4. *State v. Holm*, 2006 UT 31, ¶ 10, 137 P.3d 726.

5. *State v. Goodman*, 763 P.2d 786, 786 (Utah 1988) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

support the trial court's finding that he "knowingly" failed to register. Finally, we will discuss his argument that his rights to procedural due process were violated because the statute does not provide for a hearing on the question of whether he is currently dangerous.

## I. THE REGISTRATION STATUTE DOES NOT VIOLATE THE NON-DELEGATION DOCTRINE

¶ 13 Briggs challenges the constitutionality of the registration statute, arguing that it impermissibly delegates legislative power to the DOC. This, he claims, violates the non-delegation doctrine inherent in article V, section 1 of the Utah Constitution, the separation of powers clause, which provides,

> The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.[6]

¶ 14 We have held that the Utah Constitution "restrict[s] the ability of the legislature to delegate legislative functions to administrative agencies."[7] While the legislature is not required to expressly authorize every administrative action, procedure, or rule, it is prohibited from delegating "core" or "essential" legislative power or functions.[8] We have held that the "definition of a crime and the precise punishment therefor [are] essen-tial legislative functions, which cannot be transferred."[9]

¶ 15 Briggs asserts that the registration statute violates the non-delegation doctrine because the DOC defines what constitutes "failure to register." In support, Briggs points out that the statute merely provides that " '[r]egister' means to comply with the rules of the department made under this section."[10] Briggs argues that because the DOC prescribes the rules governing registration, it defines the elements of the crime of failure to register.

¶ 16 Briggs is incorrect. Every element of failing to register is defined by the legislature in the statute. The legislature defined "failure to register" as failing to "comply with the rules of the department made *under this section*," meaning section 77–27–21.5.[11] In that section, the legislature very precisely defines who must register,[12] when they must register,[13] for how long they must register,[14] and the information they must provide to be registered.[15] Subsection (9) requires sex offenders to register annually and within ten days of every change of habitation.[16] Subsection (11) requires sex offenders to provide their name, any aliases by which they might be known, residential address, physical description, age, vehicle information, current photograph, and the names of any institution of higher education in which they are enrolled or employed.[17] Thus the statute describes in great detail the requirements of "registration." The statute does not give the DOC discretion to add or remove any of these requirements; it merely confers discre-

---

6. Utah Const. art. V, § 1.

7. *Robinson v. State*, 2001 UT 21, ¶ 14, 20 P.3d 396.

8. *See Salt Lake City v. Ohms*, 881 P.2d 844, 848 (Utah 1994).

9. *State v. Gallion*, 572 P.2d 683, 689 (Utah 1977) (holding that the Utah Controlled Substances Act impermissibly delegated the power to define a controlled substance and the punishment for the crime of possession of a controlled substance to the attorney general); *see also State v. Johnson*, 44 Utah 18, 137 P. 632, 634 (1913) (holding that this court will not engage in "judicial legislation" by defining the elements of a crime).

10. Utah Code Ann. § 77–27–21.5(1)(d) (Supp. 2007).

11. *Id.* (emphasis added).

12. *Id.* § 77–27–21.5(1)(e).

13. *Id.* § 77–27–21.5(5)–(8).

14. *Id.* § 77–27–21.5(9).

15. *Id.* § 77–27–21.5(11).

16. *Id.* § 77–27–21.5(9).

17. *Id.* § 77–27–21.5(11).

tion to prescribe procedures for sex offenders to fulfil the statutory requirements.

¶ 17 Briggs points out that he was, in fact, arrested for failing to sign the form, and he notes that the statute does not contain any requirement that he sign the form.[18] Utah Administrative Code rule 251–110–3(2), a DOC-made rule, provides that "[r]egistrants shall sign the Utah Sex Offender Registration Form and the Sex Offender Address Form upon each request."[19] Briggs asserts that he cannot be convicted for failure to comply with this rule because it is not found in the statute.

¶ 18 But Briggs was not convicted for failure to sign the form. In fact, the first case against Briggs was dismissed after the district attorney noted that signing a form was not a requirement of the statute. Briggs became "unregistered" only after he moved to Salt Lake City and failed to provide his address to the DOC within ten days. After moving a second time, he again failed to provide the DOC with his updated address. If Briggs had met all of the statutory registration requirements but merely failed to sign the form, he would not be unregistered, and the State has not claimed otherwise. Although the form prescribed by the DOC in Utah Administrative code rule 251–110–3(2) provides a convenient way for sex offenders to comply with the registration law, failure to use or sign the form is not a crime. Thus, the statute does not give the DOC authority to define any element of the crime, and the DOC, by using the form, has not exceeded its authority in that respect. Therefore, we affirm the trial court's holding that the registration statute does not violate the non-delegation doctrine of the Utah Constitution.

¶ 19 We now turn to Briggs's claim that the evidence presented against him at trial was insufficient to support his conviction for failure to register as a sex offender.

## II. INSUFFICIENT EVIDENCE

¶ 20 Briggs argues that the trial court erred by convicting him because there was insufficient evidence to show that he "know-

ingly" failed to register under the registration statute. He argues that certain facts demonstrate that, subsequent to leaving prison, he believed that he was in fact registered. For example, he sent correspondence to the DOC, which included his first Salt Lake City address, to request information about property he lost when he was first incarcerated. He received repeated visits from law enforcement officers at his residence, and he gave them his name. During a visit with his attorney, his attorney showed him the registry, including Briggs's photo and profile.

¶ 21 But the record clearly shows that Briggs was informed of his duty to provide the DOC with up-to-date address information and that he failed to do so. The form that Agent Pepper read aloud to Briggs before his release clearly notified him of his responsibility to send his updated address and other information to the DOC annually and every time he changed addresses. Agent Pepper explained that Briggs needed to sign the form and that it was against the law to refuse to do so. Briggs replied, "You'll have to file charges against me if you can find me." Even if Briggs's refusal is viewed in the best possible light—meaning that he only refused to sign but not to complete the statutory requirements of registration—he was clearly informed that failure to update the DOC with his address every time he moved would be a chargeable offense. He expressed his indifference that his failure to comply could result in charges being filed against him. And although he lived in two different residences following his release from prison, Briggs never provided an updated address to the registry.

¶ 22 In light of the undisputed record, it is clear that Briggs knowingly refused to comply with his responsibility to register. Briggs's assertion that he did not want or need to sign the form or that he believed he was registered after leaving the prison, does not outweigh the testimony of Agent Pepper, who explained the requirements to him. The verdict, therefore, was not "against the clear weight of the evidence." Having addressed Briggs's separation of powers argument and

---

18. *See id.* § 77–27–21.5.

19. Utah Admin. Code r. 251–110–3(2) (2008).

his insufficiency of the evidence argument, we now turn to his argument that the registration statute violates his right to procedural due process.

## III.  PROCEDURAL DUE PROCESS

¶ 23 Briggs argues that the registration statute violates his right to procedural due process because it labels him as "currently dangerous" without providing a hearing to determine whether he is, in fact, currently dangerous.  We hold that the provisions of the registration statute that require him to register and that require the DOC to publish information related to his prior convictions, current address, appearance, and other similar information do not violate his right to procedural due process.  But to the extent that the registry implies that Briggs is currently dangerous without affording him a hearing on the accuracy of that designation, his right to procedural due process is violated.

### A.  Resolving Constitutional Issues With Reference to the Federal Constitution and the Utah Constitution

█ ¶ 24 Both the federal Constitution and the Utah Constitution contain provisions safeguarding an individual's right to due process of law.  The Utah Constitution provides that "[n]o person shall be deprived of life, liberty or property, without due process of law." [20]  The Fifth Amendment to the federal Constitution also provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." [21]  While the text of the two provisions is identical, we do not presume that federal court interpretations of federal Constitutional provisions control the meaning of identical provisions in the Utah Constitution.[22]  In fact, we have not hesitated to interpret the provisions of the Utah Constitution to provide more expansive protections than similar federal provisions where appropriate.[23]

¶ 25 The order in which we address textually similar constitutional provisions—state before federal or vice versa—depends upon several factors and requires a case-by-case resolution.  Often the parties will frame their arguments entirely in terms of either the Utah Constitution or the federal Constitution.[24]  In some instances, resolving the case using the Utah Constitution renders the clearest result, and so we will resolve the case with reference only to the Utah Constitution.[25]

█ ¶ 26 Nevertheless, the protections in the federal Constitution provide a constitutional floor, which, if Utah's Constitution or laws provide a lesser level of protection, renders interpretation of Utah's Constitution unnecessary.[26]  In other words, if the challenged state action violates the federal Constitution, we need not reach the question of whether the Utah Constitution provides additional protection; we may instead resolve the case with reference only to the federal Constitution.

¶ 27 Such is the case here.  Briggs argues that we should examine the registration stat-

**20.**  Utah Const. art. I, § 7.

**21.**  U.S. Const. amend. V.

**22.**  *State v. Tiedemann*, 2007 UT 49, ¶ 37, 162 P.3d 1106.

**23.**  *See, e.g., State v. Larocco*, 794 P.2d 460, 464–65, 467–71 (Utah 1990) (plurality opinion) (holding that the search and seizure provisions of the Utah Constitution provided broader protection than those in the federal Constitution and concluding that the search was reasonable under the federal Constitution but not under the Utah Constitution); *see also State v. DeBooy*, 2000 UT 32, ¶ 12, 996 P.2d 546.

**24.**  *Tiedemann*, 2007 UT 49, ¶ 33, 162 P.3d 1106 (holding that the order in which we address state and federal Constitutional provisions turns, in part, on "the way in which such issues have been framed by the parties").

**25.**  *E.g., State v. Watts*, 750 P.2d 1219, 1221 n. 8 (Utah 1988) (holding that "choosing to give the Utah Constitution a somewhat different construction [than the federal Constitution] may prove to be an appropriate method for insulating the state's citizens from the vagaries of inconsistent interpretations given to the fourth amendment by the federal courts").

**26.**  *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (holding that the Due Process Clause of the Fourteenth Amendment, through which the federal Constitution's protections are applied to the states, establishes a constitutional floor, but not a uniform standard); *West v. Thomson Newspapers*, 872 P.2d 999, 1007 (Utah 1994).

ute using the federal model, but that we should hold that the Utah Constitution provides a higher level of protection for Utah's citizens. Under the federal procedural due process analysis, he asserts, the government must provide a constitutionally adequate process before it deprives him of an interest in life, liberty, or property.[27] He argues that the registration statute deprives him of his liberty interest in his reputation. Because we hold that under federal procedural due process Briggs is entitled to a hearing prior to the DOC's publishing any information related to his current dangerousness, it is unnecessary to reach the question of whether the Utah Constitution also requires the DOC to provide a hearing before publishing information related to his current dangerousness.[28]

### B. Deprivation of a Protected Liberty Interest

¶ 28 Under the Due Process Clause of the federal Constitution, the government may not deprive individuals of their liberty interest in reputation without due process of law.

1. Damage to Reputation, When Accompanied by a Change in Legal Status, Constitutes a Deprivation of an Individual's Liberty Interest

¶ 29 In *Wisconsin v. Constantineau,* the United States Supreme Court held that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." [29] In *Constantineau,* a statute authorized certain local officials or spouses of affected individuals to post in retail liquor stores the name of individuals who engaged in "excessive drinking" and became "dangerous to the peace of any community." [30] The statute forbade the sale or gift of alcohol to the individuals whose names had been posted.[31] The plaintiff in *Constantineau,* whose name was posted on such a list, challenged the statute on procedural due process grounds because the statute did not provide notice or a hearing before individuals' names could be posted.[32] The Supreme Court held that the statute was unconstitutional because it contained no provision for notice and a hearing before the state was permitted to attach a "badge of infamy" to the plaintiff.[33]

¶ 30 In *Paul v. Davis,* the Court clarified that damage to reputation alone is insufficient for a procedural due process claim without some further showing that the state action has "deprived the individual of a right previously held under state law." [34] Therefore, the government must provide constitutionally adequate process before it deprives

---

27. See *Gray v. Dep't of Employment Sec.,* 681 P.2d 807, 816, 819, 820 (Utah 1984); *see also Kentucky Dep't of Corrs. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (holding that this analysis applies to claims brought under the Due Process Clause of the federal Constitution) *overruled in part on other grounds, Abner v. Dir., TDCJ–CID,* 2006 WL 1472376, 2006 U.S. Dist. LEXIS 36830.

28. We do note, however, that we have previously held as follows with respect to due process analysis under the federal and Utah constitutions:

   Utah's constitutional guarantee of due process is substantially the same as the due process guarantees contained in the Fifth and Fourteenth amendments to the United States Constitution. Therefore, our analysis of questions concerning procedural due process under the due process provisions of the United States and Utah constitutions are [sic] also substantially the same.

   *Bailey v. Bayles,* 2002 UT 58, ¶ 11 n. 2, 52 P.3d 1158 (citations and internal quotation marks omitted).

29. 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

30. *Id.* at 434 n. 2, 91 S.Ct. 507.

31. *Id.* at 436, 91 S.Ct. 507.

32. *Id.* at 434 n. 2, 91 S.Ct. 507.

33. *Id.* at 437, 91 S.Ct. 507.

34. 424 U.S. 693, 708, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *see also Jensen v. Redevelopment Agency,* 998 F.2d 1550, 1558 (10th Cir.1993) ("To be successful on their claim for deprivation of a liberty interest in their reputations, plaintiffs must allege and establish that there was information published that was false and stigmatizing. Moreover, it is necessary that the alleged stigmatization be entangled with some further interest." (citations and internal quotation marks omitted)).

individuals of a reputational interest that affects their legal status.[35]

## 2. Briggs Argues That the Registration Statute Damages His Reputation and Changes His Legal Status, and that He Is, Therefore, Deprived of a Liberty Interest

¶ 31 Briggs asserts that the registration and notification provisions of the statute violate his procedural due process rights because he is listed on the registry without a hearing on whether he is currently dangerous. He argues that the registration and publication of his information label him as a current danger to the community who is likely to reoffend. This official designation potentially exposes him to vigilantism, police surveillance, ostracism, physical violence, and discrimination in housing and employment. Briggs argues that for these reasons, he is entitled to a hearing to determine whether he is currently dangerous.

■ ¶ 32 Briggs does not carefully differentiate between those provisions of the registration statute implying current dangerousness and those that only enumerate his past convictions, current address, appearance, and other similar information.[36] We take care to distinguish between them. We will separately analyze each component of the statute to determine whether it violates Briggs's right to procedural due process.

## 3. The Registration Statute Deprives Briggs of a Liberty Interest in Reputation

■ ¶ 33 The Utah registration statute requires the DOC to publish two distinct types of information—information that implies that listed offenders are currently dangerous and information that does not. Most of the information published on the registry, including the offender's prior convictions, current address, appearance, and other similar information relates to the offender's prior convictions or simply lists vital information, and does not impermissibly opine on the offender's present likelihood of committing a crime. The DOC's publication of information related to appearance, address, and other similar information, standing alone, does not imply that the listed offender is currently dangerous.

■ ¶ 34 But one section of Utah's registration statute does require the DOC to publish information implying that the listed offender is currently dangerous. Section 77–27–21.5(13)(a)(ii) requires the DOC to publish information related to the offender's "primary and secondary targets." [37] Neither the registration statute nor the registry defines what constitutes a "primary target" or a "secondary target." *Webster's New College Dictionary* defines "target" as "an objective; goal" or "someone or something that is the focus of attention, interest, etc." [38] If the registry entry for a registered offender lists "minor females" under the heading "primary target," it implies that the offender's current goal, focus of attention, or interest is minor females. Even if the DOC derives the listed

---

**35.** *See Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

**36.** In addition, we note that Briggs has not claimed that the registration statute violates his right to substantive due process; Briggs asserts only that it violates his right to procedural due process. Substantive due process and procedural due process are fundamentally different. Importantly, the remedies that a plaintiff may seek differ under the two theories. *McKinney v. Pate*, 20 F.3d 1550, 1558, 1560 (11th Cir.1994). The remedies for violations of substantive due process include damages to compensate for the deprivation or injunctive relief to prevent further deprivation. *Id.* at 1557–58. The remedies for violations of procedural due process include damages or a constitutionally adequate proce-

dure. *Id.* at 1560. In this case, Briggs has asserted that he is entitled to an additional procedure—an evidentiary hearing where he would have an opportunity to prove that he is no longer dangerous. His proposed remedy—and, therefore, his asserted constitutional deficiency—is strictly procedural. Briggs did not make a substantive due process argument to the trial court, nor has he made the argument to us on appeal, and, consequently, it is not properly before us. We therefore do not decide today whether any aspect of the registration statute violates substantive due process.

**37.** Utah Code Ann. § 77–27–21.5(13)(a)(ii) (Supp.2007).

**38.** *Webster's New College Dictionary* 1465 (2007).

offender's primary target by reference to the offender's past victims, the label is troubling in that it implies that the offender is *presently* focused on repeating past crimes with similar victims. Anyone reading the registry would likely conclude that the offender's primary target is the DOC's prediction regarding the offender's next victim.

¶ 35 In addition to primary target information, the Utah registration statute requires the DOC to publish information on the offender's secondary targets. While primary targets is troubling because it implies future dangerousness, the undefined nature of the term "secondary targets" raises even more concerns. We presume that the offender's primary targets are derived from a description of the victim of the offender's past offense, but we are unable to discern how the DOC identifies the offender's secondary targets. This lack of structure for identifying secondary targets raises additional due process concerns because the offender does not even know what facts are relevant for determining secondary targets.

¶ 36 By including information implying that the offender is currently dangerous, Utah's registry damages the offender's reputation and changes his legal status, depriving him of a protected liberty interest in reputation. Like the list of those who drank excessively in *Constantineau*, the statutorily mandated designation of "currently dangerous" changes the legal status of listed offenders. The registry attaches a "badge of infamy," officially designating listed offenders as prone to future criminality.

### C. Constitutionally Adequate Process

¶ 37 The State first argues that offenders are not entitled to a hearing on current dangerousness because, whether currently dangerous or not, they are still required to register if they have been convicted of one of the offenses enumerated in Utah Code subsections 77–27–21.5(1)(f), (10)(c)(ii). Second, the State argues that offenders received all the process that is due when they are convicted of one of the enumerated offenses at a full and fair trial.

1. The State Argues That Current Dangerousness Is Irrelevant to Whether Briggs Must Register Because the Registration Statute Requires All Sex Offenders to Register Without Regard to Current Dangerousness

¶ 38 The State argues that Briggs is not entitled to a hearing because the fact he seeks to establish in that hearing—that he is not currently dangerous—is irrelevant to whether he must register under the statute. In fact, the registration statute requires offenders to register solely on the basis of their conviction of one or more of the enumerated offenses.[39] The statute does not require that only currently dangerous offenders register. Therefore, the State correctly notes, even if Briggs is adjudicated non-dangerous, he is still required to register under the terms of the statute.

¶ 39 The State relies on *Connecticut Department of Public Safety v. Doe* in which the United States Supreme Court rejected a similar challenge to Connecticut's sex offender registration law.[40] The plaintiff in that case, a convicted sex offender, argued that his right to procedural due process was violated because he had not had a hearing to determine whether he was currently dangerous before being listed on the registry.[41] As is the case here, the Connecticut registration statute required all convicted sex offenders to register without regard to whether they were currently dangerous, and thus it provided no hearing. The Supreme Court rejected the plaintiff's challenge, holding that "any hearing on current dangerousness is a bootless exercise" because current dangerousness was irrelevant to the statutory registration requirement and the content of the registry.[42] The only relevant fact was the plaintiff's prior conviction—a fact that he had already had a procedurally safeguarded op-

---

**39.** *Id.* § 77–27–21.5(1)(f), (10)(c)(ii).

**40.** 538 U.S. 1, 7–8, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003).

**41.** *Id.* at 4–6, 123 S.Ct. 1160.

**42.** *Id.* at 7–8, 123 S.Ct. 1160.

portunity to contest at trial.[43]  Indeed, the Connecticut sex offender registry did not purport to predict the current dangerousness of any registered sex offender, and it contained a disclaimer that Connecticut "has made no determination that any individual included in the registry is currently dangerous.  Individuals included within the registry are included solely by virtue of their past conviction record and state law." [44]

¶ 40 The State argues that under *Connecticut Department of Public Safety*, Briggs is not entitled to a hearing on his current dangerousness because current dangerousness is not a statutorily enumerated criterion of registration.  According to the State, under Utah's registration statute, the only criterion that need be met in order for registration to be required is that an individual has been convicted of one of the offenses enumerated in subsections 77–27–21.5(1)(f) or (10)(c)(ii), and, therefore, as in *Connecticut Department of Public Safety*, an inquiry into current dangerousness would be irrelevant.  Therefore, the State argues, the content or message of the registry on which the individual's name will be listed is irrelevant.

2.  The State Argues That Even If the Registration Statute Deprives Offenders of a Liberty Interest in Reputation, They Have Received Constitutionally Adequate Procedure at a Full and Fair Trial

¶ 41 The State argues that, to the extent the registry deprives offenders of their liberty interest in reputation, the trial at which they are convicted of the underlying offense is constitutionally adequate process.  The Court in *Connecticut Department of Public Safety* held that a hearing on whether the plaintiff in that case was currently dangerous was unnecessary because the registration requirements under Connecticut's statute "turn on an offender's conviction alone—a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest." [45]  Thus, the State argues, Briggs has already been given constitutionally adequate

procedure at his trial for the underlying offense, the conviction for which requires him to register.

3.  Under *Connecticut Department of Public Safety*, Briggs Is Not Entitled to Additional Procedure Before the DOC Publishes Information Related to His Past Convictions, but He Is Entitled to Additional Procedure Before the DOC Publishes Information Implying That he Is Currently Dangerous

¶ 42 We agree, in part, with the State's arguments.  We agree that *Connecticut Department of Public Safety* is applicable to this case, and that, under that case, the registration and notification provisions requiring publication of offenders' prior convictions, current address, appearance, and other similar information are constitutional.  Listed offenders have already had a procedurally safeguarded opportunity to contest their conviction at trial, and no more procedure is required before the DOC may publish that information.  The DOC's publication of information related to appearance, address, and other similar information, standing alone, does not imply that any listed offender is currently dangerous.  Both the Utah statute and the Connecticut statute list this type of information.  But Utah's registration statute is different from the statute in *Connecticut Department of Public Safety* in one key respect—Utah's statute requires the DOC to publish information implying that the listed offender is currently dangerous.  Yet the offenders have not had an opportunity to be heard on the validity of that designation.

¶ 43 In *Connecticut Department of Public Safety*, the Supreme Court held that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are *relevant to the statutory scheme*." [46]  The Court found that current dangerousness was irrelevant to Connecticut's statutory scheme because current dangerousness was not among the statutorily enumerated criteria for

---

**43.**  *Id.* at 7, 123 S.Ct. 1160.

**44.**  *Id.* at 5, 123 S.Ct. 1160 (internal quotation marks omitted).

**45.**  *Id.* at 7, 123 S.Ct. 1160.

**46.**  *Id.* at 8, 123 S.Ct. 1160 (emphasis added).

who must register *and* because the registry itself did not imply and, in fact, specifically disclaimed that Connecticut had determined that any listed individual was currently dangerous.[47] In other words, current dangerousness was irrelevant both to the statutorily enumerated requirements of registration and to the content or message of the registry.[48] Because the Connecticut statute and registry referred only to past convictions, a hearing on current dangerousness in that case was irrelevant. The State argues that *Connecticut Department of Public Safety* mandates that we reach the same result here. We disagree. Indeed, *Connecticut Department of Public Safety* specifically provides that plaintiffs are entitled to a hearing if the facts they seek to establish in the hearing are relevant to the statutory scheme.

¶ 44 Such is the case here. As noted above, section 77–27–21.5(13)(a)(ii) of Utah's registration statute implies that listed individuals are currently dangerous by requiring the DOC to publish offenders' "primary and secondary targets."[49]

47. *Id.* at 7, 123 S.Ct. 1160.

48. The State's reading of *Connecticut Department of Public Safety*—that a hearing is required only where the fact to be determined at the hearing is relevant to the statutorily enumerated registration criteria and that the message conveyed by the registry is irrelevant to the question of whether a hearing is required—does not comport with the Supreme Court's citation with approval of *Wisconsin v. Constantineau* in that same case. *Id.* at 7, 123 S.Ct. 1160. As noted above, the statute in *Constantineau* authorized the government to post the plaintiff's name in liquor stores, damaging her reputation without providing her an opportunity to contest the relevant facts. *Constantineau,* 400 U.S. at 434 n. 2, 91 S.Ct. 507. On its face, the statute did not require any judicial determination that the plaintiff engaged in "excessive drinking." *Id.* But the Supreme Court in *Constantineau* held that the message conveyed by posting the plaintiff's name in liquor retail stores was "a stigma or badge of disgrace." *Id.* at 436, 91 S.Ct. 507. As is the case here, the fact to be determined at the hearing in *Constantineau* was irrelevant to the statutorily enumerated criteria allowing an individual's name to be posted. Nevertheless, the Supreme Court held that the plaintiff was entitled to a hearing because the fact to be determined at the requested hearing was relevant to the message conveyed by the posting.

■■■ ¶ 45 Like the registry in *Connecticut Department of Public Safety,* Utah's registry also contains a disclaimer, but Utah's disclaimer does not effectively dispel the implication of current dangerousness. The Utah registry's disclaimer provides that "[t]he information contained on this site does not imply listed individuals will commit a specific type of crime in the future, nor does it imply that if a future crime is committed by a listed individual what the nature of that crime may be."[50] While it disclaims the DOC's ability to predict specifically *which* crime listed offenders will commit, it intimates that the offenders will commit some kind of crime in the future. Unlike the clear and unambiguous disclaimer in *Connecticut Department of Public Safety*—"[Connecticut] has made no determination that any individual included in the registry is currently dangerous"[51]—the Utah registry's disclaimer does not effectively dispel the impression that the listed individuals are currently dangerous.

¶ 46 Thus the question of current dangerousness is highly relevant to the content or message of the registry and thus relevant to Utah's statutory scheme. And the trial at

49. Utah Code Ann. § 77–27–21.5(13)(a)(ii).

50. Utah's registration statute requires the DOC to post a disclaimer on the website informing the public that

> (a) the information contained on the site is obtained from sex offenders and the department does not guarantee its accuracy;
> (b) members of the public are not allowed to use the information to harass or threaten sex offenders or members of their families; and
> (c) harassment, stalking, or threats against sex offenders or their families are prohibited and doing so may violate Utah criminal laws.

Utah Code Ann. § 77–27–21.5(22).

The website, however, contains the following additional disclaimers:

> The information contained on this site does not imply listed individuals will commit a specific type of crime in the future, nor does it imply that if a future crime is committed by a listed individual what the nature of that crime may be and the Department makes no representation as to any offender's likelihood of re-offending.

Utah Department of Corrections—SONAR—Sex Offender Notification and Registration, http:// corrections.utah.gov/asp-bin/sonar.asp.

51. 538 U.S. at 5, 123 S.Ct. 1160 (internal quotation marks omitted).

which the offenders were convicted of an underlying offense does not provide a procedurally safeguarded opportunity to contest the fact of their current dangerousness. Thus they have not had notice and an opportunity to be heard on the accuracy of that designation.

¶ 47 When ruling on the constitutionality of a statute, " 'the general rule is that statutes, where possible, are to be construed so as to sustain their constitutionality. Accordingly, if a portion of the statute might be saved by severing the part that is unconstitutional, such should be done.' " [52] We hold, consistent with *Connecticut Department of Public Safety*, that those provisions of the registration statute requiring the DOC to publish information related to Briggs's prior convictions, current address, appearance, and other similar information are constitutional, and no further process is required. We therefore affirm Briggs's conviction under Utah Code section 77-27-21.5 for failure to register as a sex offender. But we further hold that section 77-27-21.5(13)(a)(ii), requiring the DOC to publish Briggs's primary and secondary targets and thereby implying that he is currently dangerous, violates his right to procedural due process unless the DOC provides him a hearing. The DOC may not publish information implying that Briggs is currently dangerous unless it proves as much at a hearing where Briggs has notice and an opportunity to be heard on the validity of that designation.

## CONCLUSION

¶ 48 We hold that Briggs's sufficiency of the evidence and non-delegation claims are without merit. We further hold that the provisions of the registration statute that, without providing Briggs a hearing, require him to register and that require the DOC to publish information relating to his prior convictions, current address, appearance, and other similar information do not violate his right to procedural due process. Accordingly, we affirm his conviction for failure to register as a sex offender. However, we

hold that section 77-27-21.5(13)(a)(ii) of the registration statute, requiring the DOC to publish Briggs's primary and secondary targets and thereby implying that he is currently dangerous violates his right to procedural due process unless he is given a hearing as to whether he is currently dangerous. Accordingly, we affirm Briggs's conviction but reverse the trial court's ruling as to the constitutionality of those portions of the registration statute requiring the DOC to publish, without according him a hearing, information implying that he is currently dangerous. We remand for proceedings consistent with this opinion.

¶ 49 Justice WILKINS and Justice NEHRING concur in Associate Chief Justice DURRANT'S opinion.

DURHAM, Chief Justice, concurring:

¶ 50 I concur in the result of the majority opinion, and have no quarrel with its analysis of the federal due process question. I believe, however, that in addressing the federal constitutional challenge before the state constitutional challenge, the opinion overlooks the proper order of analysis. *See, e.g., West v. Thomson Newspapers*, 872 P.2d 999, 1006 (Utah 1994).

¶ 51 Conceptually, there will be no claim of a violation of federal rights requiring redress if state law prohibits the challenged action. *See,* Hans Linde, *E Pluribus—Constitutional Theory and State Courts*, 18 Ga. L.Rev. 165, 178 (1984). Thus, if a state statute, common law rule, or constitutional provision is dispositive of a claim before us, federal analysis need not be undertaken as part of a "dual sovereignty" approach. *Cf.,* Robert Utter, *Swimming in the Jaws of the Crocodile: State Court Comment on Federal Constitutional Issues when Disposing of Cases on State Constitutional Grounds*, 63 Tex. L.Rev. 1025, 1047 (1985) ("[W]hen the state court finds that the state constitutional provision condemns the challenged conduct ... the state constitution will have resolved the

---

**52.** *Midvale City Corp. v. Haltom*, 2003 UT 26, ¶ 53, 73 P.3d 334 (quoting *State v. Lopes*, 1999

UT 24, ¶ 18, 980 P.2d 191).

issue in controversy; analysis of the federal provision will not be necessary to the case.").

¶ 52 The failure to undertake independent state analysis in cases where state law is argued contributes to a paucity of precedent and the absence of an independent and adequate state ground for our holding. This result is occasionally thrust upon us by parties who fail to raise state constitutional questions, *see Brigham City v. Stuart,* 2005 UT 13, ¶¶ 12–14, 122 P.3d 506, *rev'd.,* 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006), but I think it is unfortunate when we embrace it ourselves.

¶ 53 Justice PARRISH concurs in Chief Justice DURHAM's opinion.